IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JIMMY ROBINSON, SR.**, | ) |
| Plaintiff, | ) |
| v. | ) 2:13cv369 |
| | ) **Electronic Filing** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY**, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

May 14, 2014

## I. INTRODUCTION

Plaintiff Jimmy Robinson, Sr. ("Robinson"), brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, Robinson's motion for summary judgment (*ECF No. 8*) will be granted, and the Commissioner's motion for summary judgment (*ECF No. 9*) will be denied. The Commissioner's decision will be reversed, and the case will be remanded solely for a calculation of the benefits owed to Robinson.

## II. PROCEDURAL HISTORY

Robinson protectively applied for disability insurance benefits on May 3, 2010, alleging that he had become "disabled" on January 15, 2010. R. 24, 110. Pennsylvania's Bureau of

1

Disability Determination ("Bureau") denied the application on September 22, 2010. R. 60. Robinson responded on October 26, 2010, by filing a request for an administrative hearing. R. 66. On September 23, 2011, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") James J. Pileggi. R. 35. Robinson, who was assisted by a non-attorney representative,[1] appeared and testified at the hearing. R. 39-47. He amended his alleged onset date to March 2, 2010. R. 38, 170. Karen S. Krull ("Krull"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. 47-49. In a decision dated October 24, 2011, the ALJ determined that Robinson was not "disabled" within the meaning of the Act. R. 21-31.

On November 8, 2011, Robinson sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. 19. The Appeals Council denied the request for review on January 25, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. 3. Robinson commenced this action on March 14, 2013, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. Robinson and the Commissioner filed motions for summary judgment[2] on December 12, 2013, and January 13, 2014, respectively. Those motions are the subject of this memorandum opinion.

---

[1] The Act permits non-attorneys to represent claimants in Social Security disability proceedings conducted before the Commissioner. 42 U.S.C. § 406(a)(1).

[2] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Rule 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D. Ark. 1987).

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

3

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

4

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

IV. **THE ALJ'S DECISION**

Robinson was insured for Title II benefits through March 31, 2011. R. 129. In his decision, the ALJ determined that Robinson had not engaged in substantial gainful activity between his amended onset date and the expiration of his insured status. R. 26. Robinson was found to be suffering from glaucoma, obesity, high blood pressure, hearing loss, and pain in his

5

knees and back. R. 26-27. His glaucoma and obesity were deemed to be "severe" under the Commissioner's regulations. R. 26; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). The ALJ concluded that Robinson's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 27.

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Robinson's "residual functional capacity"[3] as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant is unable to operate motor vehicles for commercial purposes and he must work in close proximity to a restroom.

R. 27. Robinson had "past relevant work"[4] experience as a truck driver. R. 134. Krull classified that position as a "semi-skilled"[5] job at the "medium"[6] level of exertion. R. 47. Since the ALJ's residual functional capacity assessment specifically precluded jobs requiring the operation of

---

[3] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).
[4] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).
[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

motor vehicles for commercial purposes, it was determined that Robinson could not return to his past relevant work. R. 29, 47-48.

Robinson was born on February 29, 1948, making him sixty-two years old on his alleged onset date and sixty-three years old on the last day of his insured period. R. 40. He was classified as a person "closely approaching retirement age" under the Commissioner's regulations. 20 C.F.R. § 404.1563(e). Robinson had a high school education and an ability to communicate in English. R. 40; 20 C.F.R. § 404.1564(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Robinson could work as a janitor, a dishwasher, or an assembler. R. 30. Krull's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A).[7] R. 48.

## V. THE EVIDENTIARY RECORD

Robinson graduated from high school in 1966. R. 40, 134. In 1972, he completed a specialized training program designed to prepare him for driving a truck. R. 134. For most of his adult life, Robinson worked as a truck driver. R. 134.

Dr. David E. Wood examined Robinson on April 27, 2009. R. 173-174. The examination took place at the request of Robinson's primary care physician, Dr. Anthony F. Uberti. R. 174. Robinson was referred to Dr. Wood because of drainage in his right ear. R. 174. It was noted that Robinson had been suffering from "a tympanic membrane perforation involving

---

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

7

the right ear" for more than twenty years.[8] R. 174. Dr. Wood provided Robinson with a prescription for Ciprodex to alleviate his symptoms. R. 174.

Robinson experienced chest pain during the fall of 2009. R. 192. On October 1, 2009, he underwent a cardiac stress test to evaluate his risk of having a heart attack. R. 192-193. Although Robinson did not suffer chest pain while exercising, the test had to be terminated because of his "shortness of breath and fatigue." R. 192. It was determined that Robinson had a "low functional capacity," but that his deficiencies were attributable to "extracardiac causes." R. 193.

Dr. Kary J. Schroyer examined Robinson on December 2, 2009. R. 178-179. Robinson complained that his medications were not controlling his hypertension. R. 178. He was concerned that his high blood pressure would prevent him from passing a work-related physical examination required by the Department of Transportation ("DOT").[9] R. 178. After examining Robinson, Dr. Schroyer reported that his peripheral circulation was "grossly normal," and that he was not suffering from "edema of the lower limbs." R. 178.

Robinson's glaucoma started to make it difficult for him to see in "adverse weather." R. 41. He stopped working as a truck driver on January 15, 2010. R. 41, 133. This apparently occurred because Robinson had crashed his truck into a cement block that he could not see, causing the nonrenewal of his lease. R. 41, 133. Shortly thereafter, he successfully applied for a widower's pension. R. 41. During the spring of 2010, Robinson was told that he was "partially blind," and that the optic nerve in his right eye was "almost diminished." R. 182. He

---

[8] The documentary record suggests that roughly seventy to ninety percent of Robinson's right eardrum was missing. R. at 229-230.
[9] In light of Robinson's productive work history, the fact that he was trying to control his blood pressure for the specific purpose of keeping his job should have weighed in favor of a finding that his testimony was credible. *Taybron v. Harris*, 667 F.2d 412, 415, n. 6 (3d Cir. 1981).

protectively applied for disability insurance benefits on May 3, 2010. R. 24. As of June 18, 2010, Robinson was still complaining of an inability to control his blood pressure. R. 217.

Dr. Michael D. Hancock, a doctor affiliated with the Laurel Eye Clinic, examined Robinson on June 22, 2010. R. 201. One week later, Dr. Hancock completed a medical source statement in connection with Robinson's application for benefits. R. 200-201. On the portion of the form describing limitations to "other physical functions," Dr. Hancock reported that Robinson's ability to see was restricted by "advanced glaucoma" accompanied by "severe visual field loss." R. 201. In all other categories, Dr. Hancock checked the boxes indicating that Robinson had no relevant functional limitations. R. 200-201. Under each heading, Dr. Hancock left a notation reading, "No limitations related to vision." R. 200-201.

For the next several months, Robinson continued to be plagued by high blood pressure. R. 219, 221. On September 20, 2010, Dr. Jennifer R. Olbum performed a consultative eye examination of Robinson. R. 212, 216. During the examination, Robinson complained of "difficulty with night driving" and problems utilizing his peripheral vision. R. 212. A "visual field test" detected a "loss of central vision" in Robinson's right eye. R. 212. His "left visual field" was found to be "essentially normal." R. 212. Dr. Olbum described her examination findings as being consistent with Robinson's complaints of "blurred vision in the right eye and difficulty with driving." R. 212. She stated that while he could legally drive a car, he could no longer operate a truck. R. 212. It was noted that Robinson was no longer eligible for a commercial driver's license ("CDL"). R. 212.

Suzanne J. Brinker ("Brinker"), an adjudicator working for the Bureau, concluded on September 22, 2010, that Robinson was physically capable of performing a range of "medium" work that did not involve concentrated exposure to machinery, heights, and other workplace

hazards. R. 53-59. In the narrative portion of her report, Brinker stated that medications had been "relatively effective" in controlling Robinson's symptoms, and that he had "stopped working for reasons other than his medical condition." R. 58. Brinker's findings resulted in the administrative denial of Robinson's application for benefits. R. 60. Under the Commissioner's regulations, however, Brinker's administrative findings did not constitute "evidence" of Robinson's ability to work. 20 C.F.R. § 404.1527(e)(1)(i).

At some point during the fall of 2010, Robinson started to work at a Walmart retail establishment.[10] R. 44, 223. In a treatment note dated October 26, 2010, Dr. Uberti observed that Robinson had been unable to stand for eight hours per day while working at Walmart. R. 223. Dr. Uberti recommended that Robinson restrict his "activity level" to four hours per day. R. 224. Robinson testified that, during the course of his employment at Walmart, he had been unable to stand for the 135 minutes necessary to complete the first part of a shift. R. 44-45. He further stated that it had been difficult for him to walk back to his car after leaving his work station. R. 45. The ALJ ultimately determined that Robinson's brief period of employment at Walmart had constituted an "unsuccessful work attempt," since he had "stopped working because of his impairments." R. 26; 20 C.F.R. § 404.1574(a)(1), (c).

After the hearing, the ALJ left the record open for an additional thirty days in order to afford Robinson an opportunity to submit more information. R. 38, 50. X-rays taken on September 27, 2011, detected degenerative changes in Robinson's left knee, minimal patellar spurring in his right knee, and degenerative spurring in his lumbar spine. R. 237-239. On September 29, 2011, Dr. Uberti reported that Robinson could stand or walk for only two hours,

---

[10] Dr. Valeri Roth treated Robinson for a recurrence of his ear impairment during that same period of time. R. at 229-230.

and sit for only four hours, during the course of an eight-hour workday.[11] R. 233-234. Dr. Uberti asserted that Robinson could lift or carry objects weighing only up to ten pounds. R. 233. Robinson was described as being limited to only occasional balancing and completely precluded from performing other postural maneuvers. R. 234. Dr. Uberti also opined that Robinson could not maintain a full-time job because of numbness in his legs, and that his functional limitations had been present before March 31, 2011. R. 235.

In a memorandum submitted to the ALJ in advance of the hearing, Robinson's representative pointed out that Medical-Vocational Rule 202.06[12] would direct a finding of disability in the event that Robinson were deemed to be capable of performing only "light"[13] work. R. 108. She went on to argue that Robinson had been "capable of no more than sedentary[14] employment since his alleged onset date." R. 108. In response to a question posed by Robinson's representative, Krull testified that no "medium" work existed in the national economy for an individual who could not stand or walk for more than fifty percent of a standard workday. R. 49.

---

[11] Dr. Uberti indicated that Robinson could stand or walk for only fifteen minutes, and sit for only two hours, without interruption. R. at 233-234.

[12] The Commissioner can rely on the Medical-Vocational Rules "to determine issues that do not require case-by-case consideration." *Heckler v. Campbell*, 461 U.S. 458, 467, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[14] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

## VI. DISCUSSION

The ALJ accorded "great weight" to Dr. Olbum's examination findings in determining that Robinson was "unable to operate motor vehicles for commercial purposes." R. 27-29, 212. Robinson testified that he was taking Lisinopril for high blood pressure, and that his use of that medication was causing him to urinate frequently. R. 46. The ALJ addressed that concern by restricting Robinson to a range of job duties that could be performed "in close proximity to a restroom." R. 27. Aside from those limitations, the ALJ concluded that Robinson had been capable of performing a relatively unrestricted range of "medium" work prior to the expiration of his insured status. R. 27. In making that finding, the ALJ purported to give "great weight" to Dr. Hancock's assertion that Robinson "had no limitations other than some impairment in seeing." R. 28-29. Robinson, who brings this action on a *pro se* basis, contends that the ALJ erred in determining that he could perform "medium" work despite the fact that he had been unable to continue working for Walmart on a part-time basis. ECF No. 8 at 1.

An administrative law judge's decision is not based on substantial evidence if it is premised on a mischaracterization of the relevant medical evidence. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Aside from the "severe visual field loss" caused by "advanced glaucoma," Dr. Hancock opined that Robinson had "[n]o limitations *related to vision*." R. 200-201 (emphasis added). Dr. Hancock wrote that phrase *six times* on the medical source statement form that he completed in connection with Robinson's application for disability insurance benefits. R. 200-201. Consequently, Dr. Hancock's failure to identify specific lifting, carrying, standing, walking, sitting, pushing, pulling, postural and environmental limitations cannot reasonably be understood to mean that Robinson had no work-related restrictions in those areas. Instead, Dr. Hancock merely reported that if Robinson had

such restrictions, they were not *related to his vision*. R. 200-201. The ALJ clearly mischaracterized Dr. Hancock's assessment by claiming that he had found Robinson to have "no limitations other than some impairment in seeing." R. 28.

Under the Commissioner's regulations, Brinker's administrative findings did not constitute "evidence" of Robinson's ability to perform "medium" work. 20 C.F.R. § 404.1527(e)(1)(i); R. at 53-59. Since Dr. Uberti reported that Robinson could not sit, stand or walk for a total of eight hours per workday, Robinson was arguably incapable of maintaining *any* full-time job. R. 233-234. At most, Dr. Uberti believed that Robinson could perform part-time work at the "sedentary" level of exertion. R. 233-236. The ALJ afforded "little weight" to Dr. Uberti's assessment. R. 29. According to the ALJ, Dr. Uberti's opinion was unreliable because it was "not well supported by his own treatment notes." R. 29.

The probative force of any medical opinion can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). Opinions expressed by treating physicians do not necessarily bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). When conflicting medical evidence is presented, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, the administrative law judge "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In this particular case, Dr. Uberti's *uncontradicted* opinion was improperly discounted on the basis of the ALJ's "own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). If the ALJ believed Dr. Uberti's opinion to

13

be "conclusory or unclear," it was incumbent upon him to "secure additional evidence from another physician." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). Since no physician supported the ALJ's conclusion that Robinson could perform "medium" work, the Commissioner's decision in this case is not supported by substantial evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

The ALJ's residual functional capacity finding is particularly problematic in light of his decision to credit the portions of the evidence establishing Robinson's inability to continue working for Walmart. On October 26, 2010, Dr. Uberti noted that Robinson had been unable to stand long enough to complete a full shift. R. 223. Robinson was advised to restrict his "activity level" to roughly four hours per day. R. 224. At the hearing, Robinson testified that he had been unable to "stay on [his] legs" for a sufficient amount of time to complete his assigned tasks. R. 44-45. The ALJ accepted that testimony by concluding that Robinson had "stopped working *because of his impairments*." R. 26 (emphasis added). The ALJ's acknowledgement that Robinson had been unable to maintain his job at Walmart cannot be reconciled with the subsequent determination that he could perform a wide range of "medium" work.

The statute authorizing the commencement of this action provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An immediate award of benefits is appropriate only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). That standard is satisfied in this case.

At the fifth step of the sequential evaluation process, the ALJ used Medical-Vocational Rule 203.07 as a framework for decisionmaking. R. 30. In so doing, he implicitly acknowledged that Robinson had not acquired transferable job skills while working as a truck driver. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3, Rule 203.07. Given Robinson's advanced age, he was "disabled" under Medical-Vocational Rule 202.06 if he was capable of performing only "light" work. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2, Rule 202.06. If Robinson was able to perform only "sedentary" work, he was "disabled" under Medical-Vocational Rule 201.06. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.06. The ALJ was able to deny Robinson's application for benefits only by concluding that he was able to perform "medium" work. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3, Rule 203.07. For the reasons discussed earlier, however, the record is totally devoid of evidence suggesting that Robinson was able to work at the "medium" level of exertion during the relevant period of time.

Evidence postdating the expiration of a claimant's insured status may shed light on his or her condition during the insured period. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1380-1383 (Fed.Cir. 2009); *Pollard v. Halter*, 377 F.3d 183, 193-194 (2d Cir. 2004). Although Dr. Uberti completed his assessment on September 29, 2011, he reported that the functional limitations described therein had been present before March 31, 2011. R. 236. Even if Robinson was not restricted to the degree alleged by Dr. Uberti, his acknowledged inability to continue working at Walmart confirms that he was not able to remain on his feet for long periods of time. R. 26, 44-45, 223. Krull testified that no "medium" jobs existed in the national economy for an individual who could not stand or walk for more than fifty percent of a typical

15

workday.[15]  R. 49.  Because more than three years have elapsed since the expiration of Robinson's insured status, any testing that could be conducted at this late date would not relate to the period of time at issue.  *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984).  Under these circumstances, the appropriate disposition is an immediate award of benefits rather than a remand for further development of the record.  *Morales*, 225 F.3d at 320.

### VII.  CONCLUSION

For the foregoing reasons, Robinson's motion for summary judgment will be granted, and the Commissioner's motion for summary judgment  will be denied.  The Commissioner's decision denying Robinson's application for disability insurance benefits will be reversed, and the case will be remanded solely for a calculation of the benefits owed to him.  An appropriate order will follow.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:    Jimmy Robinson, Sr.  
      631 Stambaugh Avenue  
      Farrell, PA 16121

      (*Via First Class Mail*)

      Michael Colville, AUSA

      (*Via CM/ECF Electronic Mail*)

---

[15] The inquiry required under the Social Security Act, which focuses on the general expectations of employers existing in the national economy, does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117].  *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).